# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

Fort Worth, Division 4

FW 037305

2021 DEC 16  PM 2:01

DEPUTY CLERK_____

Thomas Joe Quinn
_____
Plaintiff

v.

Tarrant County College
_____
Defendant

**4-21CV-1350Y**
_____
Civil Action No.

**COMPLAINT** *and Jury Demand*

1. I believe I have been discriminated against by Tarrant County College, 300 Trinity Campus Cr, Ft. Worth TX 76102, 817-515-5137.
2. I believe the Fort Worth Division of the United States District Court for the Northern District of Teas has the proper jurisdiciton to preside over my case.
3. I believe this discrimination occurred because of my race, white, and in retaliation for my complaints of discrimination, in violation of Title VII of the Civil Rights Act of 1964.
4. As a result of this discrimination I was not offered hours and treated differently. This loss of hours affected my income.  Investigations were conducted proving my complaint. However false statements have been made.
5. The persons responsible are Gloria Maddox-Powell, Kenya Ayers, Debra Sykes West, Jerry Zumwalt, Yolanda Hughes and Barb Buchannan  --*see attached*
5. I am demaning a jury trial
6. I am asking the court to award me a settlement of $10,000.00 if I prevail.

\* Attach additional pages as needed.

Date            12/16/2021
Signature       *Thomas Joe Quinn*
Print Name      Thomas Joe Quinn
Address         1220G Airport Frwy #535
City, State, Zip  Bedford, TX 76022
Telephone       817-992-4773

*email: tjquinnquinn@gmail.con*

 

**BARLOW GARSEK & SIMON, LLP**

920 Foch Street
Fort Worth, TX 76107
T: 817.731.4500
F: 817.731.6200

Christian Dennie
CDennie@bgsfirm.com
http://www.bgsfirm.com

February 15, 2021

*Via Email and EEOC Portal*
Iran Cruz
Equal Employment Opportunity Commission
Ridge Park Place
1130 22nd Street South, Ste. 2000
Birmingham, AL 35205

> Re:    ***Thomas J. Quinn v. Tarrant County College District***
>        **EEOC Charge No. 31A-2020-00109C**

Dear Investigator Cruz:

The undersigned represents Thomas J. Quinn ("**Quinn**") regarding his complaints as referenced in his *Charge of Discrimination* filed on August 24, 2020. This correspondence serves as a response to the Tarrant County College District's ("**TCCD**") position statement filed with the Equal Employment Opportunity Commission ("**EEOC**") on December 17, 2020.

**TCCD's Position Statement Contains Misinformation and Errors**

TCCD's position statement contains numerous errors, misinformation, and hyperbole. The purpose of this correspondence is to provide accurate details addressing the many inconsistences set forth in TCCD's position statement. TCCD hired Kathy Fragnoli of The Resolution Group to investigate some of the conduct alleged in the *Charge of Discrimination*. Ms. Fragnoli uncovered systematic discrimination within TCCD's Continuing Education and Engagement Program at TCCD's North Campus. Many of the things uncovered by Ms. Fragnoli were unknown to Quinn until he received Ms. Fragnoli's two reports on or about June 15, 2020 and June 30, 2020, respectively. Specifically, in Ms. Fragnoli's report dated November 14, 2019, she confirmed and stated as follows:

> Employees fear retribution for bringing up legitimate concerns about student harassment and mistreatment and bullying of students, when it is perceived that the offender is a favorite of Skyes-West.
>
> ***
>
> After all, one black Instructor was ***terminated*** with the four white employees when she complained.



Letter to EEOC
February 15, 2020
Page 2

\*\*\*

It is recommended that a review of reassigned duties and hours of any Instructors who lodged complaints about Carolyn Howse be undertaken with an eye toward restoring them to pre-complaint levels. (Tom Quinn, for example, wants to teach but he has not been given a chance to do so.)

*See Exhibit 1 at p. 13 (emphasis added).* Quinn was unaware that he was terminated until Ms. Fragnoli's report was issued to him on June 15, 2020. Quinn was brought back after his termination with reduced hours in continuation of the discriminatory and retaliatory actions of TCCD.

In a subsequent report provided to Quinn on June 30, 2020, Ms. Fragnoli provided additional detail and new information regarding TCCD's discriminatory actions. Ms. Fragnoli's report dated December 1, 2019 further details TCCD's discriminatory behavior as follows:

The tipping point in this department came when the only white Instructors in STEPS were fired after they complained about an African-American Instructor's treatment of students. Black employees were interviewed by Sykes-West and Barbara Buchanan to replace them. Four employees described Sykes-West as a decision maker in this event.

\*\*\*

The most concerning issue raised in this investigation is the allegation of whistleblower retaliation. The STEPS (Skills Training Enrichment for Promoting Success) Instructors related that they have been taught that Title II/Section 504 requires an educational institution to respond to disability-related harassment that 'is sufficiently serious to deny or limit a student's ability to participate in programs and activities.' It requires that the institution take 'immediate and appropriate steps' to determine what occurred. They feel that their duty to report under this statute is paramount in dealing with special needs children.[1] They also believe they lost their jobs because of their reporting harassment and bullying by new Instructor, Carolyn Howse.[2]

\*\*\*

---

[1] It is important note to that the program involved special needs adults, not special needs children.
[2] The Report incorrectly states that Carolyn Howse was a new instructor. She was not a new instructor.



Letter to EEOC
February 15, 2020
Page 3

Again, no meetings or investigation took place, and the five who complained were fired a few months later via a letter[3] sent by new manager, Dr. Barbara Buchanan. A few days later, after the employees and parents protested, this was characterized as a 'mistake' by Zumwalt. While the Instructors were reinstated a few weeks later, they all lost hours. They were also excluded from the parent orientation after their rehire.

\*\*\*

Importantly, Mr. Quinn and Ms. Lemman said they learned that Debra was talking to a parent about the firing *before* it happened, and was part of the interview process when African-American employees were slated to replace white Instructors.

\*\*\*

Since the teachers complained about an African-American Instructor, part may be found to be racially motivated and fits in with prior acts of favoritism along racial lines.

\*\*\*

The terminations appear to be retaliatory.

\*\*\*

Employees fear retribution for bringing up legitimate concerns about student harassment and mistreatment and bullying of students, when it is perceived that the offender is a favorite of Sykes-West.

\*\*\*

Buchanan, was clearly acting in concert with Debra Sykes-West in terminating the Instructors.

\*\*\*

Each employee who made formal complaints felt either ignored or, worse yet, were routed back to the managers they were complaining about for resolution.

*See Exhibit 2 at p. 5, 7, 8, 9, 10, 11.* Obviously, based on independent investigations conducted at the request of TCCD, TCCD had a discriminatory environment that retaliated against Quinn.

---

[3] The "letter" was actually an email.



Letter to EEOC
February 15, 2020
Page 4

As clearly stated in Ms. Fragnoli's reports, Quinn certainly suffered an adverse employment action that was initially a termination followed by a reduced number of hours and concluding with no working hours at all. Quinn never refused to work hours for TCCD. Any such argument is a fiction created by TCCD in an effort to bolster its ever-changing position.

Quinn provides the following information in response to issues purportedly raised by TCCD in its position statement:

- Quinn was not aware that he was terminated until June 15, 2020 when he received the first report prepared by Ms. Fragnoli. Quinn later learned that he and other White instructors were excluded from training programs. *See Exhibit 3.*
- Quinn was not told why he was not provided hours for Fall 2019 and Spring 2020 until February or March 2020 and, thus, he was unaware that he was retaliated against until that time.
- Every claim in TCCD's position statement is based on the incorrect assumption that Quinn "refused" hours that were offered. Such an assertion is patently false. To the extent TCCD relies on anything said by Jerry Zumwalt, such an assertion is a complete fabrication. Mr. Zumwalt was ultimately terminated for incompetence.
- In further discussion of Quinn's alleged refusal to accept hours, it is important to understand the structure of the program where Quinn worked. There was no history of providing "games" as a separate class in the same room and time as a PALS class. The PALS class was already staffed with two instructors. Quinn was not assigned a separate classroom and would essentially have had to be a disruption to the PALS class for this purported format to occur. The "games" class was a fiction. *See Exhibits 4, 5, and 6.*
- Time reports show that African-American instructors were provided more hours than White instructors after the report of student abuse. *See Exhibit 7.* Debra Sykes-West, Quinn's supervisor, was placed on a Performance Improvement Plan, in part, for "[f]avoritism toward African-American employees/failure to lead equitably." *See Exhibit 8.* Quinn, at one point, was offered minimal hours of employment (including a single day with one (1) hour) while African-American instructors were given far more hours. Additionally, only African-American instructors were permitted to ask for and receive summer hours. Clearly, African-American instructors were treated more favorably.
- TCCD provided conflicting information as to why Quinn was not provided hours by saying at one point that adjuncts are not guaranteed hours and another that Quinn was offered and refused hours. Quinn was never offered or refused hours. When Quinn asked in September 2019, October 2019, November 2019, December 2019, and January 2020 what his status was (*i.e.,* was his employment terminated again?), he was told the following: 1) be



Letter to EEOC
February 15, 2020
Page 5

"patient"; 2) "this is on my radar"; 3) "may I ask for just a bit more patience from you?", and 4) "while I cannot discuss details of [TCCD's] fact finding process, I can assure you that this matter is a priority and your voice has been heard and it matters." *See Exhibit 9.* As a result of retaliation and discriminatory practices, Quinn was not given hours in 2020.

- Quinn followed up with Gloria Maddox Powell on multiple occasions. Ms. Powell admitted that she took five (5) months to respond to Quinn.

TCCD hired yet another investigator, Susan Sorrells, who confirmed many of Quinn's reports in a report dated January 7, 2021. *See Exhibit 10.* It is important to note that Ms. Sorrells' investigation was not an independent investigation and she was hired as counsel for TCCD, which is evidenced by the title of her report—***Attorney-Client Privileged*** *and Confidential Executive Summary Investigation Report for: Tarrant County College District.[4] See Exhibit 10 at p. 1 (emphasis added).* In pertinent part, the Ms. Sorrells' report states as follows:

> On July 30, 2020, Quinn complained in an email to Associate General Counsel Carol Bracken ("Bracken") that Sykes-West 'showed favoritism, was part of retaliation and seemed like an incompetent manager.' Quinn also complained that Human Resources did not respond to the 'numerous emails' he sent regarding his concerns. Quinn also complained that he was retaliated against when he was not offered teaching hours.

> \*\*\*

> Even though Buchanan reported directly to Sykes-West, Sykes-West stated she was not aware of the decision to inform instructors they would not be invited back; nor was she aware of any interviews of potential replacement instructors. According to Sykes-West, "On paper I was Barbara's [Buchanan's] supervisor, but I was not working closely with her." Sykes-West stated, "I have not been supervising the program. In the spring of 2018, Jerry [Zumwalt] told me 'hands off.'" However, Sykes-West received a July 2, 2018 email from Buchanan stating that "we will interview potential staff on Tuesday July 17th…Kim graciously extended use of the questions she utilizes for interviews. Do either of you have a questionnaire for interviews or suggested questions?" Sykes-West denied any knowledge of such interviews, yet she acknowledges she received an email referring to the interviews.

> Sykes-West recalled Buchanan sending her a draft email similar to the July 31, 2018 email, but Sykes-West told Buchanan not to send it and she should get authorization from Zumwalt. Sykes-West stated that when Buchanan tried to save the draft, apparently she accidentally sent it. Sykes-West described Zumwalt as "frantic" and Buchanan as "distraught and overwhelmed" by the situation. Sykes-West denied any knowledge of a

---

[4] Interestingly, Quinn asked Ms. Sorrells whether she was representing TCCD and whether she was in an attorney-client relationship. Ms. Sorrells indicated she was conducting an independent investigation and was not in an attorney-client relationship with TCCD. *See Exhibit 11.*



Letter to EEOC
February 15, 2020
Page 6

decision to inform instructors they would not be invited back, yet she admitted seeing a draft email with just such a decision.

\*\*\*

The information gathered substantiated that Human Resources personnel did not sufficiently document or investigate Lemman's and Quinn's complaints.

*See Exhibit 10 at p. 2, 6, and 9.* It is clear that Ms. Sykes-West's leadership was both deceptive and discriminatory. She was certainly aware that Quinn was terminated, but continued to fabricate and augment her recollection of the events. Although TCCD's hired attorney made a self-serving conclusion in favor of her client that she found TCCD's action not to be retaliatory, the fact finding in her report confirms exactly what Quinn reported and Ms. Fragnoli found in her report.

## Quinn Timely Filed his *Charge of Discrimination*

In addition to the factual inaccuracies presented by TCCD, TCCD also failed to accurately report the time period of the violations at issue. Quinn timely filed his *Charge of Discrimination* within three hundred (300) days of the discriminatory actions. As referenced above, the last date of discrimination occurred on or about January 30, 2020. The actions of TCCD constitute a hostile workplace claim that resulted from continuous acts of discrimination that ultimately led to a complete loss of employment. A continuous act of discrimination permits the EEOC, and ultimately a reviewing court, to consider all earlier misconduct. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Alternatively, Quinn is entitled to review based on the doctrines of equitable tolling and equitable estoppel. Quinn was not made aware of many of TCCD's discriminatory acts until TCCD finally provided him with a copy of Ms. Fragnoli's reports in June of 2020. Additionally, as Quinn followed up, he was continuously told to be "patient". *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1390 (3d Cir. 1994). To the extent the EEOC finds the filing of the *Charge of Discrimination* to be outside of the three hundred (300) day timer period, TCCD's actions prevented or delayed the filing of the *Charge of Discrimination. Delaware State Coll. v. Ricks*, 449 U.S. 250 (1980); *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452 (5th Cir. 2011). TCCD's actions permit the EEOC to review this matter.

## Conclusion

This information is provided in response to the position statement presented by TCCD and in furtherance of the information provided in the *Charge of Discrimination*. Quinn clearly suffered from the discriminatory and retaliatory acts of TCCD that caused an adverse employment action. The evidence provided herewith confirms each and every accusation set forth by Quinn. Specifically, the reports prepared by Ms. Fragnoli, an investigator hired by TCCD, confirm that



Letter to EEOC
February 15, 2020
Page 7

Quinn experienced discrimination and retaliation at the hands of TCCD.  TCCD reduced and ultimately completely cut all of Quinn's hours.  Quinn no longer receives hours from TCCD. Quinn requests that the EEOC investigate these issues and conclude with findings in his favor. Should you have any questions, please do not hesitate to contact me.

Sincerely,

Christian Dennie

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Thomas Joe Quinn

**DEFENDANTS**

Tarrant County College

**(b)** County of Residence of First Listed Plaintiff   Tarrant
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Tarrant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

RECEIVED
DEC 16 2021
KG 1:57 pm
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

n/a

Attorneys *(If Known)*

Carol Bracken

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

|  |  |  |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title 7 of the Civil Rights Act of 1964

Brief description of cause:
Discrimination based on race and retaliation for filing complaint

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   $10,000.00

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____